UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

    ALPHA ELECTRIC, INC.,

           Debtor,
_____/

Case No. 11-41738
Chapter 7
Hon. Walter Shapero

    K. JIN LIM, TRUSTEE,

           Plaintiff,

v.

    ALPHA ELECTRIC & ENGINEERING, LLC,

           Defendant.
_____/

Adversary No. 12-04639

**INITIAL OPINION IN CONNECTION WITH THE TRUSTEE'S
MOTION TO CONTINUE TEMPORARY INJUNCTION AND
TO DIRECT TURNOVER OF ASSETS**

**Background**

Alpha Electric, Inc. ("Debtor") was the subject of an involuntary Chapter 7 Petition filed on January 25, 2011, by a number of unions and their associated pension and welfare funds. No order for relief was entered until August 10, 2011. Between those two dates, the Debtor continued to operate its business pursuant to 11 U.S.C. § 303, and the terms and conditions set forth in issued orders, one of which enjoined Debtor from transferring or disposing of any of its assets without Court approval. Sometime in early 2011, the controller of the Debtor (who is the brother-in-law of the Debtor's principal operating officer, Gregg Alexander) formed and became, and remains, the sole member of Alpha Electric & Engineering, LLC ("Defendant"). He did so largely by virtue of the Debtor's severely declining financial fortunes due primarily to the failure of a large construction

multi-use project, "Bloomfield Park," in which the Debtor was heavily involved as a sub-contractor. The Defendant is in the same business as the Debtor. This adversary proceeding arises out of a series of events and is an effort by the Trustee to reach certain tangible personal property (or the proceeds of any sale of such), which she claims should be declared to be property of the estate. What is presently at issue and ripe for decision are specific items of property consisting primarily of transformers and switches ("Subject Equipment") and certain sums of money being held by the Trustee in relation thereto. This proceeding also covers other matters and items and potential relief, which will be disposed of at a later date. After the issuance of a temporary restraining order, an initial hearing, and a consensual extension of that order as a temporary injunction, the Court held an evidentiary hearing. As the result of that hearing, the Court makes the following specific findings of fact and conclusions of law:

1. As of the date of the filing of the involuntary petition against it, the Debtor had previously purchased the Subject Equipment from a third party;

2. Incident to the filing of the involuntary petition and under the statute, the Debtor was entitled to operate and run its business as if the petition had not been filed, subject to any Court order stating otherwise;

3. The Court entered an order requiring among other things Court approval of transferring or disposing of any of the Debtor's assets (Docket No. 18);

4. At some point after the filing, the Subject Equipment was delivered to the Bloomfield Park job site. It would appear, incident to the Debtor's activities in pursuance of its contracts in relation to that project, that the Debtor was a sub-contractor on that project and itself had contracts and sub-contracts in relation to the performance of its obligations, including a contract or contracts

2

with Madison Electric ("Madison"). Both the Debtor and Madison were part of the extensive tier of contractors involved in the Bloomfield Park project; (It is to be noted that there are legal issues about when, or if, materials and equipment are delivered to the job site of the type involved, become the property of the owner of the job site, in light of the lien rights of the material and equipment providers in such situations; the presence of such, and obviously a myriad of other issues, played into the hereinafter referred to events. It is not necessary for this Court to decide such issue in this case given the Court's conclusions.)

    5. Litigation involving the Bloomfield Park project owner, the underlying mortgagee, and all of the various contractors and sub-contractors on that project was pending in the Oakland County Circuit Court (Case No. 09-103301-CH). It came to be settled sometime in June or so of 2011. The part of that settlement relevant to the Debtor provided that (a) the Debtor was to be paid $107,500.00; (b) ownership of the Subject Equipment was transferred to Madison; (c) the parties executed mutual releases of real, potential, liabilities; and (d) the Subject Equipment was required to be removed by Madison from the Bloomfield Park job site by a date certain;

    6. At either the insistence of the mortgagee party to the settlement (and/or as a condition of it providing the money to be paid to the various contractors to fund the settlement which essentially involved the payment of monies and the release of lien rights), or by reason of some condition in the settlement itself, there was presented to the Bankruptcy Court a stipulation signed by the Petitioning Creditors, the Debtor, and the United States Trustee. It was accompanied by an order, the purport of which was that this Court was approving the indicated settlement and in effect such was necessary, given the operative injunction in force since the beginning of the involuntary proceedings requiring Court approval of any sale or disposition of the Debtor's assets;

3

7. The salient parts of the Order (Docket No. 46) entered by this Court pursuant to the stipulation (there being no hearing or other notice provided to anyone incident thereto) state as follows:

> ORDERED as follows:
>
> 1. *Order Resolving Petitioning Creditors' Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g) or, in the Alternative, for Entry of an Order Restricting Alleged Debtor's Business Operations and Use of Property Pursuant to 11 U.S.C. § 303(f)* [Docket No. 19] (the "Order") is hereby amended as follows:
>
> Paragraph 2 thereof is deleted and the following language is substituted therefor:
>
> Alpha is hereby enjoined from transferring or disposing of any of its assets without court approval except that Alpha is authorized to enter into and to conclude, pursuant to and as authorized by 11 U.S.C. § 303(f), that certain settlement of litigation in the matter of Wells Fargo Bank, N.A. v. Coventry II DDR Harbor Bloomfield Phase 1, LLC, *et al.,* Case No. 09-103301-CH filed in Oakland County Circuit Court, Michigan, which has already been approved by said state court and in which Alpha is a lien claimant.
>
> 2. All other provisions in the Order shall remain in full force and effect.

8. That Order was entered on July 14, 2011 (Docket No. 46). Previously, the entire settlement involving all of the parties, contractors and sub-contractors, including the Debtor and Madison, was presented to, and approved by, the Oakland County Circuit Court on July 6, 2011;

4

9. The share of the monies due and owing the Debtor pursuant to that settlement were thereafter paid out in varying amounts to the Petitioning Creditors, the state court attorney for the Debtor, and the bankruptcy attorney for the Debtor;

10. On June 22, 2011, the Defendant and Madison had entered into an agreement pursuant to which Madison sold the Subject Equipment to the Defendant for the total sum of $96,650.00, of which $21,650.00 was paid in cash, with the balance to be paid pursuant to the terms of a promissory note. The attorney who represented the Defendant in that sales transaction was the same attorney who had represented the Debtor in connection with the Bloomfield Park project settlement. Around that same time, the principal of the Debtor, Gregg Alexander, communicated with an entity ("Broker") in the business of brokering the sales of industrial equipment, such as the Subject Equipment, with a view to selling the Subject Equipment. Apparently Mr. Alexander represented himself to that entity as being connected with "Alpha Electric," (not really specifying whether that meant the Debtor or the Defendant) which owned the Subject Equipment.

11. At some point after this approving order of the settlement, and prior to January 2012, the Subject Equipment was physically moved by the Defendant from the Bloomfield Park project site to its present location, pursuant to an agreement with Madison to carry out that responsibility;

12. On August 10, 2011, the Order for Relief was entered and the Chapter 7 Trustee was thereafter appointed. On November 30, 2011, the Debtor filed its schedules and statement of financial affairs, which contained no listing or reference to any ownership of any of the Subject Equipment or any of the associated foregoing facts;

13. On December 6, 2011, the Trustee moved for Court approval of a sale of the Debtor's tangible and intangible assets for the sum of $25,000.00. Court approval was obtained by an Order

5

(Docket No. 138) dated January 26, 2012, and the sale was consummated. While there is some language in that sale motion and the ensuing documents effectuating the sale about its subject being "all" of the Debtor's assets, it is quite evident both from the amount of consideration involved and the surrounding circumstances, as well as the filed and effectuating documents, that the subject of that particular sale included only the tangible and intangible assets actually listed on the Debtor's schedules and any incident (and enumerated in the relevant documents), intangible assets. It clearly and surely did not include, and was not intended to, and cannot be fairly construed to include, any of the Subject Equipment or an interest, if any of the Debtor, in that Subject Equipment or any proceeds of any sale thereof;

14. Sometime after January 2012, and before the commencement of this adversary proceeding, apparently the Defendant, through the Broker, entered into a sales agreement or agreements with an unrelated third party or parties for the sale of the Subject Equipment. Those transactions were proceeding toward closing when the attorney for the Broker became aware of this bankruptcy proceeding. His consequent concerns about whether it was the Debtor or the Defendant who actually owned the Subject Equipment, and/or the right to sell it, and a desire to avoid any complications or problems in consummating the sale(s), led that attorney to communicate with the Trustee. The Trustee prior to that time, was not specifically aware of the pending sale or its background. Further investigation led the Trustee to commence this proceeding, and the Court subsequently issued a temporary restraining order and then a temporary injunction maintaining the status quo pending further proceedings;

15. Apparently, as of the time of the commencement of this proceeding, the sales transaction had progressed to the point where $86,000.00 of involved consideration apparently paid

6

for all or all but one item of the Subject Equipment, and had been paid or deposited by the purchaser(s) pending completion of the appropriate paperwork and actual delivery of the Subject Equipment. By agreement, that $86,000.00 was given to the Trustee to hold pending the outcome of these proceedings, and the Subject Equipment and/or all of what is supposed to be the Subject Equipment is, as noted, remains stored at a known location;

16. Also pending this decision, there have been indications there might be questions or a dispute between the Defendant, the Broker, and the purchaser (assuming there will be no issue about the right of the Defendant to sell the Subject Equipment and it is determined the Trustee has no interest in either the Subject Equipment or the proceeds of that sale) about whether the contemplated sales should be fully consummated and/or as between those parties, and whether or not the contract(s) of sale has been complied with, and what the rights of those various parties might be.

**Discussion**

It is essentially the position of the Trustee that the transfer of the Subject Equipment to Madison (and the latter's sale of it to the Defendant) when looked at as a whole, amounted to some sort of scheme or sham transaction to transfer to the Defendant property which was and rightfully should be found to be property of the bankruptcy estate. In doing so, the Trustee emphasizes the facts that (a) the Subject Equipment was in fact purchased by the Debtor and placed on the job site on which the Debtor was working; (b) the potential sale to the third party was initiated and pursued on behalf of the Defendant by Gregg Alexander who is the principal of the Debtor and who has freely admitted almost from the beginning of the Debtor's bankruptcy that at some point when his participation in that bankruptcy no longer involves him, he hopes and may expect to be employed by the Defendant; (c) his participation in the sales efforts to the third party purchaser were

7

apparently and ambiguously on behalf of an entity named, "Alpha Electric," could have meant the Debtor, but to someone unaware of the separateness of the Debtor and the Defendant, could also have meant the Defendant; and (d) that Mr. Alexander is the brother-in-law of the sole member of the Defendant, who is the former controller of the Debtor. To be sure those facts and relationships should be, and properly were, met with a degree of skepticism and concern and further investigation as to whether what happened here amounted to an attempt to essentially expropriate estate property.

Added to that is the Trustee's argument that this Court's Order approving of the settlement that effectuated the transfer of the property to Madison, was not the subject of any hearing or notice to interested parties. The Trustee notes it was only the product of a stipulation and order signed by the indicated parties, and, as such it was either the subject of a flawed or inappropriate process, or one in which there was not sufficiently full disclosure of the details of the settlement or an appreciation of the fact that one of its provisions involved the transfer of the Subject Equipment to Madison. This latter argument does not have merit, because (1) the order was entered during the gap period; and thus the normal procedural notice and other requirements of § 363 regarding sale or disposition of assets did not apply, except as such might be covered by section § 303 and/or any specific orders entered during the gap period; (2) the order was stipulated to by both the Petitioning Creditors and the United States Trustee; (3) the order on its face indicates it was sought for the purpose of providing an exception to, or relief from, an existing gap period injunction prohibiting a sale or disposition of the Debtor's assets without Court approval; (4) even if all of the underlying settlement agreements and documents involved were not filed as part of the stipulation or then affirmatively disclosed as part of the filed stipulation or associated pleadings, there was a clear and sufficient reference to the underlying state court and cause, to the point that if the stipulating parties

8

had some concern about its meaning or content, or what would happen as the result of the approval of that order, they were on notice as to where and how to pursue further information and ask appropriate questions before signing; (For all the Court knows, maybe the signing parties did so. Indeed one should assume they knew what they were signing and what its effect would be, particularly as to the transfer of the Subject Equipment to Madison.) and (5) that order was entered on July 14, 2011, and the Trustee was appointed in August 2011; there have been actions taken by third parties in reliance on the finality of that order, and no actions have been taken in this Court since then and until now to either set aside or impugn the process by which it was obtained.

In sum, the evidence produced by, and the arguments made by the Trustee are insufficient to permit a conclusion that the transfer of the Subject Equipment to Madison, or that transfer coupled with its sale by Madison to the Defendant, ought to be voided or set aside. The Court is convinced the transfer to Madison, which is the crucial transaction, was part of an arm's-length, bona fide settlement of substantial litigation involving many parties, and involved material consideration running to the Debtor. It is also to be noted that Madison is not a party to this proceeding. Even if it was, the indicated evidence is more than sufficient to sustain the Defendant's position on the aspect of the proceeding presently before the Court for decision.

The foregoing leads to the conclusion that (a) to the extent that, and the portion of, the $86,000.00 being held by the Trustee represents the proceeds of the purported sale by the Defendant of the Subject Equipment (that being the only equipment transferred to Madison pursuant to the Bloomfield Park settlement agreement), such is not property of the bankruptcy estate and should not be retained by the Trustee; and (b) the indicated Subject Equipment itself is not property of the estate, and the portion of the injunction presently in effect with reference to it as involves the Trustee

should be dissolved. In fashioning the order effectuating the foregoing, and particularly because of the potential controversy involving entitlement by other than the Trustee to the referred to monies and/or Subject Equipment (and since this is not an interpleader proceeding), it would be appropriate that at least (1) the Order by its terms be made effective only after at least three days prior notice is given to the Broker, the Defendant, and the purported purchasers from the Defendant, by way of personal service upon them or their counsel of this Opinion and the Order entered pursuant thereto; (2) the Order on its face, specify the pieces of equipment that are being released from the injunction; and (3) the Order require turnover to the Defendant of the appropriate portion of the $86,000.00 (that portion being only the payment(s) made for the purchase by the purported third party purchaser, of such of the Subject Equipment as was transferred to Madison pursuant to the Bloomfield Park settlement agreement). The Trustee shall promptly prepare and present an appropriate order consistent with this Opinion.

Finally, it should be carefully noted that neither this Opinion nor its resulting order, should be seen or construed as approving, disapproving or in any way opining upon the disposition by or on behalf, or for the benefit, of the Debtor, of the money or property or other consideration received and paid out by the Debtor as a result of the Bloomfield Park settlement. Those were gap period transactions and as such are matters covered by a combination of § 303(f), § 549(a)(2)(A), and § 549(b), and possibly other statutory provisions, and as such, not the subject of what is being decided here by the Court.

10

12-04639-wsd    Doc 18    Filed 05/09/12    Entered 05/09/12 14:51:45    Page 10 of 11

**Signed on May 09, 2012**

                                                **/s/ Walter Shapero**
                                                **Walter Shapero**
                                                **United States Bankruptcy Judge**